**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **STEPHEN M. RUBENSTEIN** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 2:23-cv-05134-JMG |
| | : | |
| **COUNTY OF CHESTER,** *et al.*, | : | |
| Defendants. | : | |

---

**MEMORANDUM OPINION**

GALLAGHER, J.                                                                    **March 7, 2025**

## I.    INTRODUCTION

Plaintiff Stephen Rubenstein ("Plaintiff") brought claims alleging violations of his constitutional rights under 42 U.S.C. § 1983 ("Section 1983) while he was incarcerated in the Chester County Prison, including a *Monell* claim against the County of Chester ("the County" or "Defendant Chester County"). Currently before the Court is the County's Motion for Summary Judgment arguing that Plaintiff's claim fails and that there is no material dispute of fact to this point. The Court agrees and will grant the County's Motion for Summary Judgment.

## II.    BACKGROUND

The Court will start with this case's procedural history before it delves into the facts alleged. Plaintiff filed his Complaint (ECF No. 2) on December 26, 2023, against Defendant Chester County and Defendants Prime Care Medical, Inc. ("Prime Care"), Karen Murphy, and Dr. Martin Zarkoski (the latter three are referred to collectively as the "Prime Care Defendants"). In his Complaint he claimed violations of the Fourteenth Amendment, due process, access to medical case, and a failure to act under Section 1983; he claims monetary and injunctive relief. *See* ECF

No. 2 at 4, 7. His Complaint was filed alongside a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1).

Then, on January 8, 2024, Plaintiff filed a Motion to Show the Cause for a Preliminary Injunction and a Temporary Restraining Order ("Motion for PI/TRO"). *See* ECF No. 5. On January 12, 2024, the Court granted Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*, and the Complaint was deemed filed. *See* ECF No. 12. Defendant Chester County answered the Complaint on February 1, 2024, *see* ECF No. 22, and the Prime Care Defendants filed their Answer, *see* ECF No. 25, on March 12, 2024. The Court set several dates to hold a hearing on Plaintiff's Motion for PI/TRO, *see* ECF Nos. 26, 31, 33, but before a hearing could be held, the Court received notice from Defendant Chester County that Plaintiff had been transferred from Chester County Prison to another correctional institution.[1] The transfer mooted his claim for injunctive relief, *see* ECF No. 45 (citing *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003); *Coward v. Thomas*, Civ. A. No. 23-2429, 2024 WL 1494421, at *2 n.29 (E.D. Pa. Apr. 5, 2024)). Defendant Chester County filed its Motion for Summary Judgment (ECF No. 43) on June 17, 2024.[2] The Court permitted Plaintiff to respond to this Motion until October 25, 2024. *See* ECF No. 45. Plaintiff has not filed a response.

With the procedural history out of the way, we can now discuss the operative facts. Because Plaintiff filed no response to Defendant Chester County's Motion for Summary Judgment, there are no competing set of facts. Accordingly, the Court "may consider Defendant's assertions of fact as undisputed for the purposes of this Motion." *Huff v. Dresher Hill Health & Rehab. Center*, Civ. A. No. 21-1773, 2023 WL 4139022, at *1 (citing Fed. R. Civ. P. 56(e)(2)). The Court will recount

---

[1] The Court granted the Prime Care Defendants Motion to Join Defendant Chester County's Notice (ECF No. 35) on September 16, 2024. *See* ECF No. 45.

[2] The Court notes for clarity that the Prime Care Defendants have not joined the County's Motion and that there is no dispositive Motion from the Prime Care Defendants currently pending before the Court.

the facts as set forth in Defendant Chester County's Statement of Uncontested Facts. *See* ECF No. 43-2. But to provide context as to Plaintiff's claims, the Court will also include the allegation plead in Plaintiff's Complaint.

Plaintiff was housed at the Chester County Prison (the "Prison") from May 13, 2023, until April 17, 2024. ECF No. 43-2 at ¶ 1. His Complaint alleges deficiencies in dental care at the facility. He alleged that Defendants maintained policy and procedures that violated his right to access medical care. *See* ECF No. 2 at 6. Plaintiff alleges that Defendants limit and deny access to medical and dental care such as "cavity repair, temp fillings, cleanings and root canals. *Id.* Plaintiff also alleges that Defendants refused Plaintiff access to his asthma inhaler. *Id.* Plaintiff alleged that the County Defendant's custom or policy, which prevented him from recieving medical care, led to him be in pain for nine months. *Id.* at 8.

Defendant Chester County contracts with Prime Care to provide medical and dental services to inmates at the Prison. *See* ECF No. 43-2 at ¶ 5. Prime Care provides all medical and dental treatment for the Prison. *Id.* at ¶ 6. Defendants Chester County and Prime Care Medical maintain a policy governing the provision of oral care at the Prison. *See id.* at ¶¶ 7-8; ECF No. 43-4 at 58-60. Further, Defendants Chester County and Prime Care Medical also have a policy, or a "care guide," regarding caring for inmates with asthma. *See* ECF No. 43-2 at ¶ 9; ECF No. 43-4 at 61-71.

On May 13, 2023, the first day he was housed in the Prison, he was subject to an initial intake screening examination by Megan Mac Minn, a medical assistant. *See* ECF No. 43-2 at ¶ 10; ECF No. 43-4 at 107-16. This examination noted that Plaintiff had asthma. *See* ECF No. 43-2 at ¶ 11; ECF No. 43-4 at 109. A peak flow test revealed a peak flow reading of 350, and Plaintiff's peak flow effort was classified as "Good." *See* ECF No. 43-4 at 109. A dental screening was also

performed upon this initial intake. *See* ECF No. 43-2 at ¶ 12. His gum condition was marked "Fair," his upper teeth were marked "Poor (Decay, Missing, Broken)," and his lower teeth were marked "Fair." *See* ECF No. 43-4 at 111.

On May 15, 2023, Plaintiff was given a more thorough intake examination by Gabriella Checchi, a physician's assistant. *See* ECF No. 43-2 at ¶ 13. This examination noted Plaintiff had a toothache and had asthma. *See* ECF No. 43-4 at 42. Plaintiff was prescribed Albuterol, an asthma medication, by PA Checchi. *See id.*; *see also* ECF No. 43-2 at ¶ 14. The records from the May 15th examination indicate that Plaintiff reported that he had not used an inhaler in over a year. *See* ECF No. 43-4 at 42; *see also* ECF No. 43-2 at ¶ 18. Also, in September of 2023, he reported to a medical assistant that his last asthma attack took place twelve years prior. *See* ECF No. 43-2 at ¶ 17; *see also* ECF No. 43-4 at 77. Albuterol treatments are administered at the Prison as needed. *See* ECF No. 43-2 at ¶ 16. Defendant Chester County cites twenty-three administrations of Albuterol while Plaintiff was housed in the Prison including an administration days before Plaintiff's Complaint (ECF No. 1) was filed. *Id.*; *see also* ECF No. 43-4 at 78-79, 82-84, 88.

On May 18, 2023, Plaintiff received a dental examination by Dr. Martin Zarkoski. *See* ECF No. 43-4 at 46; *see also* ECF No. 43-2 at ¶ 19. The exam noticed deep tooth decay into the nerves. *See* ECF No. 43-4 at 46. Plaintiff was prescribed Amoxicillin and Ibuprofen by Dr. Zarkoski. During that exam, he was advised by Dr. Zarkoski that Plaintiff have two teeth extracted, however Plaintiff signed a form refusing to consent to treatment, and he indicated that he would wait until he returned to his home to have this dental treatment. *See* ECF No. 43-4 at 48; *see also* ECF No. 43-2 at ¶ 20. Plaintiff received further dental treatment in later that year in December and in February and March of 2024. *See* ECF No. 43-2 at ¶¶ 21-23. During those visits, he complained of tooth pain, and he was prescribed non-narcotic pain medication and, during one of those visits,

an antibiotic. *See id.*; *see also* ECF No. 43-4 at 45. Lastly, Plaintiff cites a summary report in the record, *see* ECF No. 43-4 at 72, that states that Prime Care Medical performed 132 dental exams and 292 extractions at the Chester County Prison in 2023. *Id.*; *see also* ECF No. 43-2 at ¶ 25.

## III.    LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). However, when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—considered undisputed—show the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e)

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's

role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these tasks are left for the fact-finder." (internal quotation marks omitted)). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV.    DISCUSSION & ANALYSIS

Defendant Chester County is a municipality, and "a municipality or local government entity can be held liable pursuant to Section 1983 under certain limited circumstances, but not on the basis of respondeat superior." *Richardson v. PrimeCare Med., Inc.*, Civ. A. No. 16-5490, 2017 WL 2957827, at *3 (E.D. Pa. July 10, 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "[A] municipality is subject to liability under Section 1983 only when the violation of a plaintiff's federally protected rights can be attributable to the execution of a government's policy, practice, or decision of a final municipal policy maker." *Id.* (citing *Monell*, 436 U.S. at 690-91). Accordingly, Defendant Chester County may only be liable on a theory of *Monell* liability, and the Court need only analyze this claim.

To show liability on a *Monell* claim, Plaintiff "must provide evidence that there was a relevant [County] policy or custom, and that the custom caused the violation that [Plaintiff] allege[s]." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584-85 (3d Cir. 2003) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown* ("*Bryan Cnty.*"), 520 U.S. 397, 404 (1997)). So, Plaintiff must show (1) a policy or (2) a custom. "A policy is made 'when a decisionmaker processing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" *Id.* at 584 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir.

1996)). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 404).

Further, the relevant jurisprudence provides for "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the government entity for whom the employee works." *Id.* First, when "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Id.* Second, when "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Third, "a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in a violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.* This third scenario largely arises in cases where a municipality's purported failure to screen or failure to train its employees rises to the level of "deliberate indifference." *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

The record in this case demonstrates that there is no genuine dispute of material fact and that Plaintiff's *Monell* claim against Defendant Chester County fails. [3] The County is correct that,

---

[3] In adjudicating the County's Motion, the Court bases its decision solely on there being no dispute of material fact as to the existence, on this record, of a policy or custom that could have caused Plaintiff's alleged constitutional injury. Supreme Court precedent requires *Monell* liability to be predicated on an underlying constitutional injury. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell*, nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer *inflicted no constitutional harm*." (emphasis added) (internal citation omitted)). Because (1) the lack of a relevant custom or policy is dispositive in this case and (2) the Prime Care Defendants have not yet filed a dispositive motion, the Court declines to analyze the existence of any underlying alleged constitutional harm, and will assume, solely for the purposes of adjudicating this motion, that one exists.

even just at the pleadings stage, Plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Plaintiff's allegations are rather conclusory. *See* ECF No. 2 at 6 (alleging the County "set[s] and maintain[s] customs, policy, and procedure that violates plaintiff's Fourteenth Amendment rights to access medical care, Due Process clause and act deliberately [sic] indifferent for non-medical reasons when they limit and denie [sic] access to preventative care."). Plaintiff alleges that Defendant Chester County's customs allowed him to suffer without treatment options and that the County "maintain[s] the refusal of care over non-medical policy set by named defendants." *See id.* at 8.

Plaintiff's *Monell* claim stands on nothing more than the allegations in his Complaint which the Court finds to be "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct." *Phillips v. Northampton Cnty.*, 687 F. App'x 129, 132 (3d Cir. 2017) (finding municipal liability may not be established when a plaintiff has "pleaded no facts to support the existence of any policy, custom, or practice beyond those involving his own [incidents]."); *see also Matthews v. City of Phila.*, Civ. A. No. 24-6444, 2025 WL 189865, at *4 (E.D. Pa. Feb. 13, 2025) (finding *Monell* claim untenable where plaintiff only alleged "specific facts about his own experience"); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) ("[One] case standing alone does not provide sufficient proof of a policy or custom to satisfy the dictates of § 1983.").

In the record, Defendant Chester County points to the policies maintained by the County and Prime Care Medical for inmates' oral and asthma care. *See* ECF No. 43-4 at 58-60; 61-71. The dental policy provides that "the focus is on urgent and emergent care" and that a dental screening

---

Likewise, the Court declines to address the County's argument as to the Prison Litigation Reform Act's exhaustion requirement because the *Monell* claim fails on the merits.

"must also include an inquiry into the presence of any painful dental condition." *See id.* at 58. Also, "[r]outine fillings and extractions are available to all patients." *Id.* at 59. Under the policy "a medical provider is on call for emergency services 24 hours per day/365 days per year." *Id.* There is no genuine issue of material fact as to whether Defendant Chester County had a custom or policy of denying or unduly limiting dental or asthma care to inmates; the unanswered, and thus undisputed, evidence on this record shows nothing of the sort.

**V.    CONCLUSION**

In sum, there is no evidence from which a reasonable juror could conclude that Plaintiff should succeed on his *Monell* claim, and summary judgment on this claim against Defendant Chester County is proper. For the foregoing reasons, Defendant Chester County's Motion for Summary Judgment (ECF No. 43) is **GRANTED**, and accordingly Plaintiff's claim against the County is **DISMISSED WITH PREJUDICE**. An appropriate order follows.

BY THE COURT:


*/s/ John Gallagher*
JOHN M. GALLAGHER
United States District Court Judge