IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHEN M. RUBENSTEIN** :<br>Plaintiff, :<br>:<br>v. :<br>:<br>**COUNTY OF CHESTER**, *et al.*, :<br>Defendants. : | Civil No. 2:23-cv-05134-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                          **July 30, 2025**

**I.     INTRODUCTION**

Plaintiff Stephen Rubenstein ("Plaintiff") filed a lawsuit alleging violations of his constitutional rights under 42 U.S.C. § 1983 ("Section 1983") while he was incarcerated in Chester County Prison (the "Prison"). Before the Court is a Motion for Summary Judgment filed by PrimeCare Medical Inc. ("PrimeCare"), Karen Murphy, RN, and Martin Zarkoski, DMD (collectively referred to as the "PrimeCare Defendants"). Plaintiff raised two claims against the PrimeCare Defendants: (1) that Murphy and Zarkoski acted deliberately indifferent to his medical needs, and (2) that PrimeCare is liable under *Monell* for implementing a policy and/or custom which violated his constitutional rights. The Court finds that there are no genuine issues of material fact that need to be resolved at a trial. Accordingly, the Court will grant the PrimeCare Defendant's Motion for Summary Judgment.

**II.    PROCEDURAL HISTORY**

Plaintiff filed his Complaint, proceeding *pro se*, against the County of Chester and the PrimeCare Defendants. ECF No. 2. In his Complaint, Plaintiff asserts that Defendants Murphy and Zarkoski acted deliberately indifferent towards his dental and breathing issues. *Id*. at 6, ¶ A. He

1

further asserts that both the County of Chester and PrimeCare maintained practices that violated his constitutional rights under *Monell*. *Id*. For these violations, Plaintiff seeks both monetary and injunctive relief. *Id*. at 7. This Complaint was filed on December 26, 2023, along with a Motion for Leave to Proceed *in forma pauperis*. ECF No. 1.

On January 8, 2024, Plaintiff filed a Motion to Show the Cause for a Preliminary Injunction and a Temporary Restraining Order ("Motion for PI/TRO"). *See* ECF No. 5. On January 12, 2024, the Court granted Plaintiff's Motion for Leave to Proceed *in forma pauperis*. The Complaint was deemed filed in the same order. *See* ECF No. 12. Defendant Chester County subsequently answered Plaintiff's Complaint on February 1, 2024, *see* ECF No. 22, and the PrimeCare Defendants filed their answer on March 12, 2024, *see* ECF No. 25. The Court set multiple dates to hold a hearing on Plaintiff's Motion for PI/TRO, *see* ECF Nos. 26, 31, and 33. The hearing was ultimately scheduled for April 24, 2024, *see* ECF 33, however, Plaintiff was transferred from Chester County Prison to SCI Smithfield on April 18, 2024, *See* ECF No. 34. This transfer rendered Plaintiff's claim for injunctive relief moot, *see* ECF No. 45 (citing *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003); *Coward v. Thomas*, Civ. A. No. 23-2429, 2024 WL 1494421, at *2 n.29 (E.D. Pa. Apr. 5, 2024)). The County of Chester filed a Motion for Summary Judgment on June 17, 2024, *see* ECF No. 43, and the Court granted the County's Motion on March 10, 2025, *see* ECF No. 46. The PrimeCare Defendants filed the instant Motion for Summary Judgment on June 12, 2025, to which the Plaintiff has not filed a response. ECF No. 50.

The PrimeCare Defendants have also filed a Statement of Undisputed Facts ("Statement of Facts") accompanying their Motion for Summary Judgment. ECF No. 50-2. Plaintiff has not filed a competing set of facts in response, and therefore, the Court is permitted to consider the PrimeCare Defendant's set of facts as undisputed. *See Huff v. Dresher Hill Health & Rehabilitation Center*,

2023 WL4139022 at *1 (E.D. Pa. June 22, 2023) (citing Fed. R. Civ. P. 56(e)(2)). The Court will still review the allegations set forth in the Plaintiff's Complaint for contextual purposes.

### III.  FACTUAL HISTORY

Plaintiff was incarcerated at Chester County Prison from May 13, 2023, to April 17, 2024. ECF No. 43-2 at ¶ 1. In his Complaint, Plaintiff alleges that the Prison's medical staff failed to provide appropriate dental care and treatment for his asthma. ECF No. 2. Further, Plaintiff alleged that the Prison maintained policies and procedures that denied him access to medical care and violated his rights under the Fourteenth Amendment. *Id*. at 6, ¶ A. Additionally, he asserts that Karen Murphy and Martin Zarkoski refused to treat both his dental issues and asthma, which caused him prolonged pain and suffering. *Id*. Finally, he alleges that he filed multiple grievances regarding the PrimeCare Defendants' failure to provide him with adequate treatment, and that these grievances were ignored. *Id* at 8, ¶ 1.

PrimeCare contracts with Chester County to provide medical, dental, and mental health services to inmates at Chester County Prison. ECF No. 50-2, ¶ 3. The Prison has received national accreditation from the National Commission on Correctional Health Care ("NCCHC"), an organization that establishes health standards for prisons throughout the country. *Id*. at ¶ 4, 6. The accreditation process requires that the Prison meet certain threshold standards of medical care. *Id*. at ¶ 6. This accreditation process is "rigorous" and is awarded to less than 10% of prisons nationwide. *Id*. at ¶ 10. As it relates to the present matter, PrimeCare's policies and procedures governing the provision of medical, dental, and mental health services are all compliant with NCCHC standards. *Id*. at ¶ 11.

On May 13, 2023, Megan Mac Minn, a medical assistant, conducted an initial screening assessment on Plaintiff. ECF No. 50-2, ¶ 17. Mac Minn noted that Plaintiff has asthma and

performed a peak flow test, which found that his air flow levels were "Good." *Id* at ¶ 18. In this same assessment, Mac Minn performed a dental screen and reported that Plaintiff's gum condition was "fair," his upper teeth condition was "poor" (decay, missing, broken), and his lower teeth condition was "fair." *Id*. at ¶ 19.

On May 15, 2023, Plaintiff was seen by Gabriella Checchi, a physician's assistant, for a more thorough examination. ECF No. 50-2, ¶ 20. After this examination, Checchi prescribed albuterol to Plaintiff to treat his asthma and referred him for a dental evaluation. *Id*. at ¶ 22-23.

On May 16, 2023, Plaintiff was seen by Coe Kummer, LPN, for complaints of shortness of breath and wheezing. ECF No. 50-2, ¶ 26. Nurse Kummer determined that Plaintiff's airways were clear, and all of his vitals were within normal limits. *Id*. at ¶ 27-29.

On May 18, 2023, Plaintiff was seen by Dr. Martin Zarkoski for complaints of a right upper toothache. ECF No. 50-2, ¶ 33. During this evaluation, Zarkoski noted deep decay of teeth eight and nine. It was recommended that Plaintiff have these teeth extracted, but Plaintiff refused. *Id*. at ¶ 36. Zarkoski further prescribed amoxicillin for the infected teeth and ibuprofen for his pain. *Id*. at ¶ 37. It is reported in the PrimeCare Defendant's Statement of Facts that Dr. Zarkoski had no further involvement with Plaintiff. *Id*. at ¶ 39.

On September 15, 2023, Plaintiff reported to Kayla M. Deuel, CMA, that his last asthma attack took place 12 years ago. ECF No. 50-2, ¶ 31.

On November 7, 2023, Plaintiff was seen by Jaclyn Casey, PA-C, as a part of the Chronic Care Clinic to address the status of his asthma. ECF No. 50-2, ¶ 41. Casey found that Plaintiff had been compliant with his medication and had no asthma symptoms at the time of this evaluation. *Id*. at ¶ 43. Further, Plaintiff's vital signs were within normal limits, his lungs were bilaterally

4

clear, and his condition was stable. *Id*. at ¶ 44-45. A routine follow-up was scheduled for 90 days in the future. *Id*. at ¶ 47.

On December 9, 2023, Plaintiff was evaluated by Nathan Kalteski, DDS, after he complained of tooth pain in the upper left region of his mouth. ECF No. 50-2, ¶ 48-49. During this encounter, Dr. Kalteski noted that tooth thirteen was severely decayed and was not restorable. *Id*. at ¶ 50. At this time, Plaintiff declined to have the tooth extracted and stated that if the pain persisted, he would request an extraction. *Id*. at ¶ 52-53. Dr. Kalteski further ordered amoxicillin and ibuprofen to address Plaintiff's dental issues. *Id*. at ¶ 51.

On February 9, 2024, Plaintiff complained of a toothache and was evaluated by Ashley Lawson, LPN. ECF No. 50-2, ¶ 54. David Kneal, DMD, later evaluated him on February 26, 2024. *Id*. at ¶ 55. Dr. Kneal noted that Plaintiff had "cracked teeth," for which he was prescribed acetaminophen. *Id*. at ¶ 55-56. Plaintiff was evaluated again by Dr. Kneal on March 11, 2024, for "on/off quick" tooth pain, and was also prescribed acetaminophen again. *Id*. at ¶ 57.

Throughout Plaintiff's incarceration at the Prison, he was given albuterol medication treatments twenty-four times. ECF No. 50-2, ¶ 25.

## IV. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). However, when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—considered undisputed—show the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e)

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these tasks are left for the fact-finder." (internal quotation marks omitted)). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

V.    **DISCUSSION**

There are three arguments raised by the PrimeCare Defendants in their Motion for Summary Judgment. The first is that Karen Murphy, the Health Services Administrator for the Prison, and Dr. Zarkoski were not deliberately indifferent to Plaintiff's medical needs. The second argument is that Plaintiff does not have a viable claim against PrimeCare under a *Monell* theory of

6

liability. The third is that Plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act of 1995, which thus precludes the Court from hearing his lawsuit. The Court agrees with each of these arguments and will grant the PrimeCare Defendant's Motion for Summary Judgment.

### A. Plaintiff's Deliberate Indifference Claims Against Defendants Murphy and Zarkoski Fail

Plaintiff has brought a Section 1983 claim against Defendants Murphy and Zarkoski that alleges they acted deliberately indifferent to his serious medical needs by failing to adequately treat him, constituting a violation of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution. The two elements of a Section 1983 claim are that (1) defendants are acting under the color of state law; and (2) they deprived the plaintiff of a right secured by the Constitution or federal law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993)). Murphy and Zarkoski are considered state actors, which satisfies the first element of a Section 1983 claim, because "medical treatment of prison inmates by prison physicians is state action." *West v. Atkins*, 487 U.S. 42, 53-54 (1988) (citation omitted). The subsequent analysis pertains to whether Murphy and Zarkoski deprived Plaintiff of a constitutional right.

Because Plaintiff was a pre-trial detainee when he filed his lawsuit, his rights to receive adequate medical care and be free "from any and all punishment" are protected under the Fourteenth Amendment. *See Montgomery v. Aparatis Dist. Co.*, 607 F. App'x 184, 187 (3d Cir. 2015). Although his rights are protected under the Fourteenth Amendment as a pre-trial detainee, his claim will be reviewed under the Eighth Amendment standard applied to convicted prisoners' claims of inadequate medical care. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 584 (3d Cir. 2004); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d

7

Cir. 2003) (finding "no reason to apply a different standard than that set forth in *Estelle* (relating to a convicted prisoners' claims of inadequate medical care under the Eighth Amendment)"). In *Estelle v. Gamble*, the Supreme Court of the United States established the test to determine when prison employees could be held liable for failing to render adequate medical care. 429 U.S. 97, 104 (1976). The Court wrote that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id*. (citation omitted).

A constitutional violation of a prisoner's rights thus occurs when: (1) the prisoner's injury is serious, and (2) the staff responsible for providing medical care act deliberately indifferent to those injuries or illnesses. The PrimeCare Defendants concede in their Motion for Summary Judgment that Plaintiff had "serious medical needs" during his incarceration at the Prison. ECF No. 50-1 at 10. This concession is consistent with the Third Circuit's interpretation of the *Estelle* test: "A medical need is 'serious,' in satisfaction of the [ ] *Estelle* test, if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted) (citations omitted). Plaintiff's ailments were diagnosed and treated by multiple physicians at the Prison, indicating that they are serious.

Moving to the second prong of the *Estelle* test, the Supreme Court equates deliberate indifference to the mental state of recklessness that is applied to criminal cases in the Model Penal Code. *See Farmer v. Brennan*, 511 U.S. 825, 839-840 (1994) ("subjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted….and we adopt it as the test for 'deliberate indifference' under

8

the Eighth Amendment."). Criminal defendants are deemed to have the acted "recklessly" if they "'consciously disregard' a substantial risk of serious harm." *Id*. (quoting Model Penal Code § 2.02(2)(c)). Prison employees similarly violate the Eighth Amendment if they are aware that an inmate faces a serious risk of harm and act recklessly by failing to take "reasonable" measures to mitigate that risk. *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016) (citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 229 (3d Cir. 2015)). On the contrary, "[m]ere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of deliberate indifference." *Stewart v. Kelchner*, 358 F. App'x 291, 296 (3d Cir. 2009) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)).

The record supports the conclusion that Defendants Murphy and Zarkoski did not act deliberately indifferent to Plaintiff's medical needs. At most, there appears to be a disagreement regarding the treatments Plaintiff received, which does not amount to a constitutional violation. *Id*.

Regarding Plaintiff's dental care, he alleges that the PrimeCare Defendants acted deliberately indifferent by "limit[ing] and den[ying] access to [preventive] and corrective care ie: cavity repair, temp fillings, cleanings and rootcannals [sic] for non-medical reasons…." ECF No. 2 at 6, ¶ A. However, there is nothing in the record to support this assertion. Zarkoski specifically offered to extract teeth eight and nine, which were causing him pain, and Plaintiff refused this offer. *See* ECF No. 50-3 at 54. Zarkoski went on to prescribe amoxicillin for Plaintiff's infected teeth and ibuprofen for the pain he experienced. ECF No. 50-2, ¶ 37. Plaintiff was later seen by Nathan Kalteski, DDS, who offered to extract tooth thirteen nearly six months later, and this offer was refused by Plaintiff. *Id*. ¶ 52-53. Plaintiff was seen repeatedly by physicians who treated his dental ailments by prescribing both amoxicillin to treat his infected teeth, as well as ibuprofen to

treat his pain. Plaintiff puts forth no evidence to support his claims, but instead disagrees with the dental care he received, which is not reflective of a constitutional violation.

Plaintiff similarly disagrees with the pulmonary treatment he received, but this, again, does not demonstrate that the providers were deliberately indifferent. When Plaintiff expressed that he had a history of asthma, he was prescribed albuterol – a medication used to treat or prevent breathing issues caused by asthma. ECF No. 50-2, ¶ 23-25. The PrimeCare Defendant's Statement of Facts records twenty-four separate instances when the Plaintiff received albuterol treatment, spanning the duration of his incarceration at the Prison. *Id.* at ¶ 25. Thus, Plaintiff's allegation that the PrimeCare Defendants refused access to breathing treatments seems to be patently false. Moreover, Plaintiff complains that he was not provided with "asthma inhalers and treatment for [] asthma attacks," yet albuterol is a commonly prescribed medication to treat asthma. ECF No. 2 at 9, ¶ 4. Again, the medical staff treated Plaintiff's breathing issues, and Plaintiff appears to disagree with the treatment he received. Such a disagreement does not amount to a constitutional violation.

As Judge Kearney held, "[W]here medical attention is rendered and the dispute is over the adequacy of the treatment, we are 'generally reluctant to second guess medical judgments and to constitutionalize claims which are sound in state tort law.'" *Curdo v. Cnty. of Chester*, No. CV 24-132, 2024 WL 3445005, at *10 (E.D. Pa. July 17, 2024) (internal quotation marks and other citations omitted). While the Court is sympathetic to the medical ailments from which Plaintiff suffers, the nature of his complaint amounts to a disagreement with his treating physician's medical judgment. This disagreement falls well short of the deliberate indifference standard required to substantiate his Section 1983 claim. For these reasons, there is no genuine dispute of material fact, and Plaintiff's claims of deliberate indifference fail.

### B. Plaintiff's *Monell* Claim Against PrimeCare Fails

Plaintiff has also raised a Section 1983 claim under *Monell* that "PrimeCare []…. set and maintain[ed] customs, policy and procedure that violate[ed] the Plaintiff's Fourteenth Amendment right to access medical care …." ECF No. 2 at 6, ¶ 1. PrimeCare, a private corporation, is considered a state actor when it contracts with municipalities, such as Chester County, and thus can be held liable under Section 1983. *West v. Atkins*, 487 U.S. 42, 53-58 (1988). The PrimeCare Defendants further concede that PrimeCare has a contract with Chester County to provide medical services to inmates of the Prison. ECF No. 50-2, ¶ 3. However, PrimeCare may only be held liable under Section 1983 if Plaintiff could prove that PrimeCare had a policy or custom causing a constitutional violation. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690-691 (1978).

Plaintiff does not provide any facts to support the conclusion that PrimeCare has a policy or custom that causes constitutional violations. Plaintiff has alleged that PrimeCare "[M]aintains a policy of delaying treatment until [inmates are] released from their custody herein causing severe longterm [sic] health concerns." ECF No. 2 at 6, ¶ 1. But these allegations are "wholly conclusory and [raise] highly generalized assertions about patterns of misconduct." *Phillips v. Northampton Cnty.*, 687 F. App'x 129, 132 (3d Cir. 2017) (finding municipal liability is not established when a plaintiff has "pleaded no facts to support the existence of any policy, custom, or practice beyond those involving his own [incidents]."). Further, PrimeCare cannot be held liable under Section 1983 when "a person has suffered no constitutional injury at the hands of the individual [defendants]." *Curdo*, 2024 WL 3445005, at *13 (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). The Court has already determined that Plaintiff's claims as to the individual defendants are meritless*. See supra* Sect. V.A. Plaintiff's *Monell* claim fails for this reason. *See Curdo*, 2024 WL 3445005, at *13.

Additionally, Plaintiff's *Monell* claim against PrimeCare fails because the record is absent of any evidence indicating the presence of a policy or custom that causes constitutional harm. To prove that a policy has been implemented, Plaintiff would have to offer evidence that an official with final decision-making authority issued an "official proclamation, policy, or edict." *Baloga v. Pittson Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019). To demonstrate the presence of a custom, Plaintiff would have to show "a course of conduct, although not authorized by law, was so permanent and well settled as to virtually constitute law." *Id*. Plaintiff has not produced any evidence that PrimeCare maintained either a policy or a custom that denied or limited medical care. For these reasons, Plaintiff's *Monell* claim against Defendant PrimeCare fails.

C. **Plaintiff Failed to Exhaust his Administrative Remedies**

Lastly, the PrimeCare Defendants argue that regardless of the merits of Plaintiff's claims, he has yet to exhaust his administrative remedies as is required by the Prison Litigation Reform Act of 1995 ("PLRA"). The Court also agrees with this argument.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (*emphasis added*). The PLRA thus created an "exhaustion requirement," where prisoners seeking redress for alleged wrongs committed against them must utilize that prison's grievance system before bringing a lawsuit in federal court. *Porter v. Nussle*, 534 U.S. 516, 520 (2002). This requirement is mandatory and applies here. *See Booth v. Churner*, F.3d 289, 295, *aff'd*, 532 U.S. 731 (2001) (establishing that prison officials' denial of medical care constituted a "prison condition" as referenced in 42 U.S.C. § 1997e(a)).

12

Administrative remedies must be utilized because they protect judicial economy and prevent the court system from being inundated with litigation. Because of their importance, they cannot be sidestepped even when a prisoner seeks a type of relief, such as monetary damages, which the prison could not provide. *Booth v. Churner*, 532 U.S. 731, 731 (2001); *see also Porter*, 534 U.S. at 524 ("All 'available' remedies must now be exhausted . . . . Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.").

In Section VII of Plaintiff's Complaint titled "Exhaustion of Administrative Remedies, Administrative Procedures," he answered in the affirmative when asked if he filed a grievance in the Prison. ECF No. 2 at 10. However, the PrimeCare Defendants provide in their Statement of Facts that Plaintiff did not submit any grievances concerning his medical care. ECF No. 50-2, ¶ 15. The PrimeCare Defendants support their claim with an affidavit from Defendant Murphy. Defendant Murphy declared that one of her responsibilities as the Health Services Administrator is to respond to inmate grievances. ECF No. 50-3 at 19, ¶ 3. Further, she states that Plaintiff has not filed a formal grievance, nor is she aware of any requests concerning his medical care at the Prison. *Id*. at ¶ 4-5.

There is nothing in the record to contradict Defendant Murphy's affidavit as to the lack of grievances on file at the prison besides Plaintiff's own indication of such in his complaint. This alone, however, is insufficient to survive Defendant's Motion for Summary Judgment as to this point. *See Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) (holding that "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."). There is no genuine issue of material fact as to whether Plaintiff has exhausted the mandatory, administrative remedies. Nothing in the record indicates that he filed the necessary grievances to satisfy this

13

requirement. Even if the Court found Plaintiff's claims had merit, which it does not, Plaintiff's claims would fail for failure to exhaust his administrative remedies as required by the PLRA.

### VI.     CONCLUSION

In sum, there is no evidence from which a reasonable juror could conclude that Plaintiff should succeed on his claims against the PrimeCare Defendants. Therefore, summary judgment on these claims is proper. For the foregoing reasons, the PrimeCare Defendant's Motion for Summary Judgment (ECF No. 50) is **GRANTED**, and accordingly, Plaintiff's claims against the PrimeCare Defendants are **DISMISSED WITH PREJUDICE**.  An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge